# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SAN MIGUEL HOSPITAL CORPORATION,
d/b/a ALTA VISTA REGIONAL HOSPITAL, on
behalf of itself and all others similarly situated,

         Plaintiff,

v.                                  Case No. 1:25-cv-1010-MLG-DLM

RICHARD SACKLER, DAVID SACKLER,
MORTIMER D.A. SACKLER, KATHE
SACKLER, ILENE SACKLER LEFCOURT,
THERESA SACKLER, GARRETT LYNAM AS
EXECUTOR OF THE ESTATE OF JONATHAN
SACKLER, RICHARD SACKLER AND DAVID
SACKLER AS CO-EXECUTORS OF THE
ESTATE OF BEVERLY SACKLER, and
RICHARD SACKLER AND DAVID SACKLER
AS CO-EXECUTORS OF THE ESTATE OF
RAYMOND SACKLER.

         Defendants.


**AGREED MOTION TO CERTIFY THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES, PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT, APPROVE FORM AND MANNER OF NOTICE, AND SET DATE FOR FINAL <u>FAIRNESS HEARING</u>**

# TABLE OF CONTENTS

SUMMARY OF THE LITIGATION AND CLASS SETTLEMENT ................................................2

SUMMARY OF THE SETTLEMENT AGREEMENT ................................................................6

I.    ARGUMENT AND AUTHORITY................................................................................7

    A.    The Court Should Certify the Settlement Class for Settlement Purposes Only....................7

        1.    Numerosity ................................................................................................8

        2.    Commonality ................................................................................................8

        3.    Typicality ................................................................................................9

        4.    Adequacy of Representation ................................................................9

        5.    Predominance ................................................................................................10

        6.    Superiority ................................................................................................11

II.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ................................12

    A.    The Court Should Grant Preliminary Approval of the Proposed Settlement.....................12

    B.    Standards for Preliminary Approval of a Proposed Settlement................................13

    C.    The Settlement Satisfies the Rule 23(e)(2) Factors ................................................14

        1.    Proposed Settlement Class Representatives and Settlement Class Counsel Have Adequately Represented the Class ................................................14

        2.    The Proposed Settlement Was Negotiated at Arm's Length................................17

        3.    The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal ................................................................................................20

            a.    Serious Legal and Factual Questions Placed the Litigation's Outcome in Doubt......21

            b.    Immediate Recovery Is More Valuable than the Mere Possibility of a More Favorable Outcome After Further Litigation................................................22

        4.    The Proposed Methodology for Distributing Relief is Effective.........................23

        5.    Attorneys' Fees and Expenses ................................................................24

        6.    The Settling Parties Have No Additional Agreement......................................25

        7.    Settlement Class Members Are Treated Equitably................................25

        8.    The Settlement Satisfies the Remaining Factor Considered by Courts in the Tenth Circuit ................................................................................................26

III.  THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE SETTLEMENT CLASS ARE APPROPRIATE................................................................26

    A.    The Court Should Preliminarily Approve the Proposed Notice of Settlement ..................26

    B.    Appointment of A.B. Data and Cherry Bekaert Advisory LLC as the Notice and Claims Administrators Is Proper................................................................................................27

    C.    Appointment of the Hon. Thomas Hogan (Ret.) as Special Master or Trustee Is Proper.28

    D.    Appointment of Pinnacle Bank as Escrow Agent (if needed) Is Proper..............................28

E.    Establishment of the Escrow Account as "Qualified Settlement Funds", if needed, Is Proper..................................................................................................................................29

F.    Proposed Schedule of Settlement Events .............................................................29

IV.    CONCLUSION .................................................................................................................30

# TABLE OF AUTHORITIES

## Cases

*Acevedo v. Sw. Airlines Co.*,
  No. 1:16-CV-00024-MV-LF, 2019 WL 6712298 (D.N.M. Dec. 10, 2019)................................passim

*Amoco Prod. Co. v. Fed. Power Comm'n*,
  465 F.2d 1350 (10th Cir. 1972) ................................................................................................12

*Anderson Living Tr. v. Energen Res. Corp.*,
  No. CV 13-909 WJ/CG, 2021 WL 1686491 (D.N.M. Apr. 29, 2021) ......................................passim

*Arkalon Grazing Ass'n v. Chesapeake Operating, Inc.*,
  275 F.R.D. 325 (D. Kan. 2011)..................................................................................................11

*Armstrong v. Board of School Directors*,
  616 F.2d 305 (7th Cir. 1980) ....................................................................................................12

*Buttonwood Tree Value Partners, L.P. v. Sweeney*,
  No. SA-CV-1000537-CJCMLGX, 2014 WL 12586788 (C.D. Cal. May 15, 2014)..................17

*CCG Holding Co. v. Hutchens*,
  773 F.3d 1076 (10th Cir. 2014) ................................................................................................10

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
  No. 17-2142-JWB-KGG, 2020 WL 3288059 (D. Kan. June 18, 2020)..............................21, 23

*Cisneros v. EP Wrap-It Insulation, LLC*,
  No. CV 19-500 GBW/GJF, 2022 WL 2304146 (D.N.M. June 27, 2022) ..............................passim

*Cline v. Sonoco, Inc.*,
  333 F.R.D. 676 (E.D. Okla. 2019) ..............................................................................................8

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ........................................................................................................18

*DG v. Devaughn*,
  594 F.3d 1188 (10th Cir. 2010) ............................................................................................7, 8, 9

*Fager v. Centurylink Commc'ns, LLC*,
  No. 14-CV-00870 JCH/KK, 2015 WL 13298517 (D.N.M. June 25, 2015)..............................27

*Harrington v. Purdue Pharma L.P*
  603 U.S. 204 (2024) ...............................................................................................................6, 19

*Horn v. Associated Wholesale Grocers, Inc.*,
  555 F.2d 270 (10th Cir. 1977) ....................................................................................................8

*In re Crocs, Inc. Sec. Litig.*,
  306 F.R.D. 672 (D. Colo. 2014)................................................................................................23

*In re Insulin Pricing Litig.*,
  No. 3:17-CV-699-BRMLHG, 2020 WL 5642002, (D.N.J. Sept. 22, 2020) ..............................17

*In re Integra Realty Res., Inc.*,
  354 F.3d 1246 (10th Cir. 2004) ............................................................................................13, 14

*In re King Res. Co. Sec. Litig.*,
  420 F. Supp. 610 (D. Colo. Aug. 10, 1976) ..............................................................................23

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
  271 F.R.D. 263 (D. Kan. 2010)..................................................................................................11

*In re National Prescription Opiate Litigation*
  No. 1:17-md-2804, MDL 2804, (N.D. Ohio) ..............................................................................3

*In re Purdue Pharma L.P.*
   633 B.R. 53 (Bankr. S.D.N.Y. 2021) ................................................................. 16

*In re Purdue Pharma, L.P.*
   No. 19-23649 (Bankr. S.D.N.Y.) ..................................................... 3, 16, 18

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.,*
   625 F. Supp. 2d 1133 (D. Colo. 2009) .............................................................. 21

*In re Telik, Inc. Sec. Litig.,*
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................................... 18

*In re Thornburg Mortg., Inc. Sec. Litig.,*
   912 F. Supp. 2d 1178 (D.N.M. 2012) .......................................................... 22, 25

*In re Urethane Antitrust Litig.,*
   768 F.3d 1245 (10th Cir. 2014) ........................................................................ 10

*Kjessler v. Zaappaaz, Inc.,*
   No. 4:17-CV-3064, 2018 WL 8755737 (S.D. Tex. Aug. 31, 2018) .................... 17

*Lowery v. City of Albuquerque,*
   No. CIV 09-0457 JB/WDS, 2013 WL 1010384 (D.N.M. Feb. 27, 2013) .......... 18, 20

*Lucas v. Kmart Corp.,*
   234 F.R.D. 688 (D. Colo. 2006) ......................................................... 20, 21, 23, 27

*McNeely v. Nat'l Mobile Health Care, LLC,*
   No. CIV-07-933-M, 2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) .......... 20, 21, 23

*Milonas v. Williams,*
   691 F.2d 931 (10th Cir. 1982) ........................................................................... 8

*Montgomery v. Cont'l Intermodal Grp.-Trucking LLC,*
   No. 19-940 GJF, 2021 WL 1339305 (D.N.M. Apr. 9, 2021) ...................... passim

*Mullane v. Cent. Hanover Bank & Tr. Co.,*
   339 U.S. 306 (1950) ......................................................................................... 26

*Reynolds v. Beneficial Nat'l Bank,*
   288 F.3d 277 (7th Cir. 2002) ........................................................................... 22

*Rutter & Wilbanks Corp. v. Shell Oil Co.,*
   314 F.3d 1180 (10th Cir. 2002) ................................................................ 9, 13, 14

*Rutter Wilbanks Corp. v. Shell Oil Co.,*
   314 F.3d 1180 (10th Cir. 2002) ........................................................................ 10

*Sears v. Atchison, Topeka & Santa Fe Ry., Co.,*
   749 F.2d 1451 (10th Cir. 1984) ........................................................................ 12

*Tennille v. Western Union Co.,*
   785 F.3d 422 (10th Cir. 2015) ................................................................ 7, 21, 23

*Trujillo v. State of Colo.,*
   649 F.2d 823 (10th Cir. 1981) ........................................................................ 12

*Tyson Foods, Inc. v. Bouaphakeo,*
   136 S. Ct. 1036 (2016) ............................................................................... 8, 10

**Statutes**

26 CFR § 1.468B-1(c)(2)(ii) ..................................................................................... 29

**Other Authorities**

*Manual for Complex Litigation* ("*Manual*"), § 13.14 (4th ed. 2004) .............................. 12

William B. Rubenstein, 4 *Newberg On Class Actions* § 3:10, at 272-73 (5th ed. 2011) ...................... 8, 12

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................ passim
Fed. R. Civ. P. 23(a) ............................................................................................................ 7
Fed. R. Civ. P. 23(b) ...................................................................................................... 7, 11
Fed. R. Civ. P. 23(e) ................................................................................................ 12, 13, 24
Fed. R. Civ. P. 23(e)(2) ................................................................................................. 13, 24
Rule 23(e)(2)(C)(iv) .......................................................................................................... 25

Plaintiff San Miguel Hospital Corporation d/b/a Alta Vista Regional Hospital ("Plaintiff"), on behalf of itself and the class of similarly situated persons described below (collectively, the "Settlement Class") respectfully moves for an Order preliminarily approving the proposed class action settlement agreement ("Settlement Agreement") with the Sackler Defendants[1] (collectively, "Settling Defendants"; together with the Plaintiff, the "Settling Parties"). Specifically, Plaintiff requests an Order that will:

1. provisionally certify the Settlement Class for settlement purposes only;

2. preliminarily approve the Settlement Agreement;

3. appoint Plaintiff and other specified Acute Care Hospitals as Settlement Class Representatives for the Settlement Class;

4. appoint John W. ("Don") Barrett, Warren Tavares Burns, Steven A. Martino, Robert A. Clifford, Charles J. LaDuca, and Stephen B. Farmer as Interim Settlement Class Counsel for the Settlement Class;

5. approve the form and manner of the proposed Notice to the Settlement Class;

6. appoint A.B. Data and Cherry Bekaert Advisory, LLC as Notice and Claims Administrators;

7. appoint the Hon. Thomas Hogan (Ret.) as Special Master or Trustee;

8. appoint Pinnacle Bank as Custodian/Escrow Agent if needed;

9. establish the Escrow Account as Qualified Settlement Fund, if needed;

10. set a Hearing on Final Approval of Settlement, Attorneys' Fees, Litigation Expenses, and Notice and Administrative Costs ("Final Fairness Hearing") and associated

---

[1] Richard Sackler, David Sackler, Mortimer D.A. Sackler, Kathe Sackler, Ilene Sackler Lefcourt, Theresa Sackler, Garrett Lynam as executor of the estate of Jonathan Sackler, Richard Sackler and David Sackler as co-executors of the estate of Raymond Sackler, and Richard Sackler and David Sackler as co-executors of the estate of Beverly Sackler (each, individually, a "Settling Defendant" and, collectively, the "Settling Defendants").

deadlines in anticipation of that hearing;

11. grant a stay of all proceedings[2] in any forum brought by Releasors as to the Settling

Defendants, as specified in the Settlement Agreement, and directing Settlement Class

Representatives to file motions to sever and stay the Other Actions brought by the

Settlement Class Representatives as against the Settling Defendants, to the extent not

already filed; and

12. enjoin all Settlement Class Members from filing or prosecuting any new proceedings

for Released Claims, as specified in the Settlement Agreement, unless and until the

Settlement Class Member has timely and validly excluded itself from the Settlement

Class, beginning as of the date the exclusion becomes effective.

## SUMMARY OF THE LITIGATION AND CLASS SETTLEMENT

On October 14, 2025, Plaintiff San Miguel Hospital Corporation d/b/a Alta Vista Regional

Hospital, an acute care hospital in Las Vegas, New Mexico, filed this putative class action against the

Sackler Defendants. ECF No. 1. Plaintiff alleged, *inter alia*, that Defendants, both individually and by

and through Purdue,[3] participated in a conspiracy under the Racketeer Influenced and Corrupt

Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO") with Manufacturing Co-Conspirators[4] and

---

[2] For the avoidance of doubt, the Settling Parties will not seek alteration of the current stay orders in place until the Court renders a final decision regarding the approval of the Settlement Agreement.
[3] Purdue Pharma L.P., The Purdue Frederick Company, Purdue Pharma Inc., Purdue Pharmaceutical Products L.P. and Purdue Products L.P., Rhodes Pharmaceuticals L.P., Rhodes Technologies, Rhodes Technologies Inc., Avrio Health Limited Partnership, Purdue Transdermal Technologies L.P., Purdue Pharma Manufacturing L.P., Purdue Pharmaceuticals L.P., Imbrium Therapeutics L.P., Adlon Therapeutics L.P., Greenfield BioVentures L.P., Seven Seas Hill Corp., Ophir Green Corp., Purdue Pharma of Puerto Rico, Avrio Health L.P., Purdue Pharmaceutical Products L.P., Purdue Neuroscience Company, Nayatt Cove Lifescience Inc., Button Land L.P., Rhodes Associates L.P., Paul Land Inc., Quidnick Land L.P., Rhodes Pharmaceuticals L.P., Rhodes Technologies, UDF L.P., SVC Pharma L.P. and SVC Pharma Inc.. and any other Debtor entities or any other entities owned or controlled, in whole or in part, directly or indirectly, by or on behalf of the Sackler family (collectively referred to as "Purdue").
[4] Indivior, Inc. f/k/a Reckitt Benckiser Pharmaceuticals, Inc.; Hikma Pharmaceuticals USA Inc. f/k/a West-Ward Pharmaceuticals Corp.; Grünenthal GmbH; Abbott Laboratories, Inc.; AbbVie, Inc.;

Distributor Co-Conspirators[5] that resulted in an epidemic of opioid addiction throughout the United States. *See id.* ¶ 26. Plaintiff alleged that it and the putative class were injured as a result of Defendants' actions. *See id.* ¶ 98. Defendants have and continue to deny Plaintiff's allegations and any associated liability.

Proposed Settlement Class Counsel represent hundreds of acute care hospitals throughout the nation, including Plaintiff. Exhibit 1, Declaration of Warren Tavares Burns ("Burns Decl.") at ¶ 6. Since 2017, acute care hospitals represented by proposed Settlement Class Counsel have been litigating claims related to the opioids epidemic against many of the same Defendants and/or Co-Conspirators in numerous state and federal courts, including in the federal MDL proceedings, *In re National Prescription Opiate Litigation*, Case No. 1:17-md-2804, MDL 2804, (N.D. Ohio). *Id.*

In 2019, facing civil litigation in hundreds of actions across the United States, Purdue Pharma, L.P. ("Purdue" or "Debtor") filed for chapter 11 bankruptcy. *See In re Purdue Pharma, L.P.*, Case No. 19-23649 (Bankr. S.D.N.Y.). Following the bankruptcy filing, various creditor groups engaged in protracted arm's-length negotiations with Purdue and members of the Sackler family, including the Sackler Defendants. These negotiations, which lasted many months, were facilitated by retired U.S. District Judge Layn R. Phillips and by Kenneth R. Feinberg. The first phase of mediation resulted in

---

Watson Laboratories, Inc.; Actavis Pharma, Inc. (f/k/a Watson Pharma Inc.); Actavis LLC (f/k/a Actavis Inc.); Allergan plc; Allergan Finance, LLC; Allergan Sales, LLC; Allergan USA, Inc.; Endo Pharmaceuticals Inc.; Endo Health Solutions, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Mallinckrodt LLC; Mallinckrodt plc; SpecGx LLC, Teva Pharmaceutical Industries, Ltd.; Teva Pharmaceuticals USA, Inc.; and Cephalon, Inc (collectively referred to as "Manufacturing Co-Conspirators").

[5] Henry Schein, Inc.; Walgreen Co.; Walgreen Eastern Co., Inc.; CVS Pharmacy, Inc.; CVS Rx Services, Inc.; CVS Orlando FL Distribution, L.L.C.; Kroger Co.; Kroger Limited Partnership I; Kroger Limited Partnership II; Walmart Inc. f/k/a Wal-Mart Stores, Inc.; Albertsons Companies, Inc.; Albertson's LLC; Safeway, Inc.; Giant Eagle, Inc.; HBC Service Company; Publix Super Markets, Inc.; AmerisourceBergen Drug Corporation; Xcenda L.L.C.; Anda, Inc.; Cardinal Health, Inc.; H.D. Smith, LLC (f/k/a H.D. Smith Wholesale Drug Co.); H.D. Smith Holdings, LLC; H.D. Smith Holding Company; McKesson Corporation (collectively referred to as "Distributor Co-Conspirators"; Manufacturing Co-Conspirators and Distributor Co-Conspirators collectively referred to as "Co-Conspirators").

allocation settlements between non-federal public claimants and several private claimants groups. Shortly thereafter, Purdue and members of the Sackler family reached related settlements with the Department of Justice, which was approved by the bankruptcy court. The second phase of mediation culminated in a proposed chapter 11 plan of reorganization (the "Plan") for Purdue. And in late 2021, about two years after negotiations had started, the Plan was confirmed by the bankruptcy court in the Southern District of New York (U.S. Bankr. Judge Robert D. Drain, presiding).

In the bankruptcy action, since October 2019, the Debtors, as well as the Sacklers, provided unprecedented amounts of discovery to key stakeholders, including Plaintiff, in order to allow creditors to investigate potential claims. In October 2019, the Debtors, the committee of unsecured creditors ("UCC"), on behalf of all unsecured creditors of Purdue (including Plaintiff), and members of the Sackler family agreed that the Debtors and the Sacklers would provide certain diligence materials to the UCC pursuant to a Stipulation. In accordance with the Stipulation, the Raymond Sackler family, for example, provided presentations totaling 1,152 slides, 80,000 pages of detailed business plans, financial reports, management and board presentations, and sales-related and other materials spanning decades. Starting in November 2019, the UCC also propounded informal discovery requests on the Sacklers, and the Raymond Sackler family produced over 50,000 pages of documents in response, including documents produced in the pre-petition proceedings and investigations, documents supporting presentations given under the Stipulation, and documents relating to family trusts.

On March 31, 2020, in response to a subpoena, the Raymond Sackler family alone produced approximately one million pages of discovery relating to Purdue's marketing and sale of opioids, transfers or distributions by Purdue to any Sackler family trusts or entities, and the Sackler families' proposed contribution to a settlement in these cases. The discovered materials consisted of personal emails and other communications dating back at least to 1995, and more than a decade's worth of bank statements, financial statements, tax returns, tax workpapers, and loan information for family

members and trusts of which they are beneficiaries. The scope of discovery even encompassed social media accounts, college email inboxes, and business ventures unrelated to Purdue or pharmaceuticals. Additionally, every living member of the Raymond Sackler family who served on Purdue's board, family members without a role at Purdue, and the Raymond Sackler family's close advisors were deposed, including in some instances, by the states.

Over the next year and a half, the Debtors also produced over 90 million pages of material to estate stakeholders on issues relating to estate claims and the underlying opioid liability claims. These materials included significant discovery from Sackler family custodians and directors from within the past 25 years. Moreover, members of the Sackler family provided discovery of individual Sackler family members and the Sacklers' financial institutions in response to the UCC's investigation of potential claims against members of the Sackler family. The UCC compelled the production of over 16,000 privileged documents from the Debtors, which included communications with members of the Sackler families. The UCC and Non-Consenting States also took 16 depositions of members of the Sackler families, current and former Board members, current employees of the Debtors, and other parties.

In late 2021, Judge Drain confirmed the chapter 11 plan. As confirmed, the Plan would have resolved and released creditors' claims. However, the confirmation was appealed, and in December 2021, Judge Colleen McMahon of the U.S. District Court of the Southern District of New York reversed the confirmation, which was then appealed to the Second Circuit. The Second Circuit reversed the district court, reviving the bankruptcy court's reorganization plan (which had been modified). The appeals ultimately reached the Supreme Court. And in June 2024, the Supreme Court vacated the bankruptcy court's chapter 11 plan, holding that the Bankruptcy Code does not authorize a bankruptcy court to approve, as part of a plan of reorganization under chapter 11, releases and

injunctions that extinguish claims against nondebtor third parties, such as the Sacklers, without the consent of affected claimants. *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024).

Since 2017, Plaintiffs in the ACH Opioids Litigation have vigorously pursued their claims. Ex. 1, Burns Decl. at ¶ 7. Their efforts have included multiple rounds of dispositive briefing and interlocutory and other appeals. *Id.* Some Plaintiffs have produced millions of pages of documents, and terabytes of data related to their treatment of patients diagnosed with opioid use disorder or related conditions. *Id.* Plaintiffs in the ACH Opioids Litigation have likewise reviewed voluminous discovery produced by Co-Conspirators of the Settling Defendants. *Id.* Certain of the Plaintiffs have provided depositions of corporate representatives and employee witnesses. *Id.* During the ongoing ACH Opioids Litigation, Plaintiffs have also engaged over a dozen experts to provide testimony on issues relating to alleged liability and damages. *Id.* Since 2024, proposed Settlement Class Counsel have been engaged in negotiations with Settling Defendants to resolve the Settling Parties' dispute.

## SUMMARY OF THE SETTLEMENT AGREEMENT

The Settlement Agreement, once approved by this Court, will provide significant and nearly immediate compensation to the proposed Settlement Class. Exhibit 2, Settlement Agreement. The Settlement Agreement totals $174,215,320.82 and provides other relief important to the Settlement Class. The following is a summary of the key financial terms found in the Settlement Agreement:

- Up to $174,215,320.82 to be paid into the agreed Escrow or Trust Account, once all conditions are satisfied.

Under the terms of the Settlement Agreement, the Settlement Funds will be used to pay for Notice and Administrative Costs. Further, the Settlement Funds will be used for any award of attorneys' fees and costs authorized by the Court. Additional terms are detailed in the Settlement Agreement.

## I.    ARGUMENT AND AUTHORITY

### A.    The Court Should Certify the Settlement Class for Settlement Purposes Only.

In considering a proposed class action settlement, federal courts determine whether a settlement class would be appropriate under Rule 23. *See, e.g.*, *Tennille v. Western Union Co.*, 785 F.3d 422, 430 (10th Cir. 2015). Rule 23 has four factors for class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a). Rule 23(b) also examines whether common questions predominate over individual issues, and whether a class action is superior to other methods of litigation. *See* Fed. R. Civ. P. 23(b).

Federal courts have "considerable discretion" in making class certification decisions. *DG v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010). The Tenth Circuit defers to a trial court's certification ruling where "it applies the proper Rule 23 standard and its decision falls within the bounds of rationally available choices given the facts and law involved in the matter at hand." *Id.* (citation and internal quotations omitted).

The Settlement Agreement provides that the parties to that Agreement stipulate to: (1) the certification of the Settlement Class for settlement purposes; (2) the appointment of Plaintiff and other identified acute care hospitals as the Settlement Class Representatives; and (3) the appointment of John W. ("Don") Barrett, Warren Tavares Burns, Steven A. Martino, Robert A. Clifford, Charles J. LaDuca, and Stephen B. Farmer as Settlement Class Counsel for the Settlement Class. The Parties to the Settlement Agreement therefore jointly move the Court to certify for that Settlement, a Settlement Class defined as follows:

> All Acute Care Hospitals in the United States that (i) are not owned or operated by a federal, state, county, parish, city, or other municipal government; and (ii) treated patients diagnosed with opioid use disorder and/or other opioid-related conditions at any time from January 1, 2009, through the date of entry of the Preliminary Approval Order.

Certification of the Settlement Class for settlement purposes furthers the interests of Settlement Class Members and the Settling Defendants by allowing the case to be settled on a class-wide basis. The proposed Settlement Class satisfies the requirements of Rule 23, and thus the Court should grant class certification.

### 1. Numerosity

Rule 23(a)(1) requires "the class [be] so numerous that joinder of all members is impracticable." *See Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977) (holding class as small as 46 members is sufficient). Here, the Settlement Class consists of potentially over five thousand acute care hospitals dispersed throughout the nation, making joinder of all Settlement Class Members impracticable. Exhibit 3, Declaration of Brian Devery at ¶ 7 ("Devery Decl."); *see Cline v. Sonoco, Inc.*, 333 F.R.D. 676, 682 (E.D. Okla. 2019) ("[T]he proposed class encompasses thousands of interest owners, which easily satisfies the numerosity requirement under Rule 23(a)(1)."). Numerosity, therefore, is satisfied.

### 2. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." A "common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1045 (2016) (citation omitted). "Factual differences in the claims of class members should not result in a denial of class certification where common questions of law exist." *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982). The plaintiff need only show a single issue common to all members of the class. *See DG*, 594 F.3d at 1195; William B. Rubenstein, 4 *Newberg On Class Actions* § 3:10, at 272–73 (5th ed. 2011).

As detailed fully in its complaint, Plaintiff's and the proposed Settlement Class's claims involve numerous common questions of law and fact, including, *inter alia*:

- Did the Settling Defendants, by and through Purdue, and the Manufacturing Co-Conspirators manufacture prescription opioids?

- Did Settling Defendants, both individually and by and through Purdue, make misleading statements regarding the risks and benefits of prescription opioids?

- Did Settling Defendants and Co-Conspirators engage in wire fraud?

- Did Settling Defendants and Co-Conspirators engage in mail fraud?

- Did Settling Defendants and Co-Conspirators corrupt an official proceeding?

Exhibit 4, Class Action Complaint, ECF 1.

### 3.    Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." To meet this requirement, "[e]very member of the class need not be in a situation identical to that of the named plaintiff." *DG*, 594 F.3d at 1195 (citation omitted). Rather, "[p]rovided the claims and Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Id.* at 1198–99.

The proposed Settlement Class Representatives' claims are typical of the Settlement Class's claims, because the proposed Settlement Class Representatives are acute care hospitals who treated patients diagnosed with opioid use disorder and/or other opioid-related conditions. The same legal theories and issues of fact underlie the claims of the Settlement Class and the proposed Settlement Class Representatives. Accordingly, the Settlement Class satisfies typicality.

### 4.    Adequacy of Representation

Rule 23(a)(4) requires plaintiffs to show they "will fairly and adequately protect the interests of the class." In the Tenth Circuit, adequacy is satisfied when (1) neither the plaintiff nor its counsel has interests that conflict with the interests of other class members, and (2) the plaintiff will prosecute the action vigorously through qualified counsel. *See Rutter Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180,

1188–89 (10th Cir. 2002). No conflicts exist between Plaintiff or its counsel and other members of the Settlement Class. To the contrary, Plaintiff and the proposed Settlement Class Representatives share the same incentive as the Settlement Class to vigorously prosecute this case and obtain recovery.

Plaintiff, the proposed Settlement Class Representatives, and proposed Settlement Class Counsel, have vigorously prosecuted this case and similar cases related to the opioids epidemic in multiple state and federal jurisdictions throughout the country. Proposed Settlement Class Counsel are highly experienced in class actions. *See* Ex. 1, Burns Decl. at ¶ 5. Proposed Settlement Class Counsel have been appointed as lead counsel in multiple previous class actions. *Id.* The proposed Settlement Class Representatives and Settlement Class Counsel satisfy adequacy of representation.

### 5. Predominance

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" by asking "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 136 S. Ct. at 1045 (citation omitted); *see also, e.g.*, *CCG Holding Co. v. Hutchens*, 773 F.3d 1076, 1087 (10th Cir. 2014) (same); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1255 (10th Cir. 2014) ("Classwide proof is not required for all issues. Instead, Rule 23(b)(3) simply requires a showing that the questions common to the class predominate over individualized questions."). Thus, when "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods*, 136 S. Ct. at 1045 (citation omitted). Where, as here, proposed Settlement Class Representatives' and the Settlement Class's claims stem from a "'common nucleus of operative facts,'" common issues

predominate and certification is appropriate. *Arkalon Grazing Ass'n v. Chesapeake Operating, Inc.*, 275 F.R.D. 325, 331 (D. Kan. 2011) (citation omitted).

The Settlement Class readily satisfies predominance. Common questions regarding the existence of a RICO conspiracy, Settling Defendants' participation in the same, and causation all predominate over potential individual issues, to the extent any may be identified. Damages, too, will be subject to common proof. Ex. 1 Burns Decl. at ¶ 7. Under the circumstances, predominance is satisfied in this case.

### 6.    Superiority

Rule 23(b)(3) requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." In considering the superiority of a class action, courts consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "In deciding whether to certify a settlement class, the Court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D)." *In re Motor Fuel Temperature Sales Pracs. Litig.*, 271 F.R.D. 263, 269 (D. Kan. 2010).

Superiority is satisfied here. The claims asserted in the ACH Opioids Litigation are highly complex and require significant investment of time and capital by the acute care hospitals and their counsel. Ex. 1, Burns Decl. at ¶ 8. Any individual case may take years to reach trial, without regard to subsequent appeals. *Id.* Litigating individual cases likewise requires a significant commitment of court resources. A class action is the superior method of fair and efficient adjudication in this matter for purposes of implementing the Settlement.

## II.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    The Court Should Grant Preliminary Approval of the Proposed Settlement.

Settlement is strongly favored as a method for resolving disputes. *See Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984); *see also Trujillo v. State of Colo.*, 649 F.2d 823, 826 (10th Cir. 1981) (citing "important public policy concerns that support voluntary settlements"); *Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354 (10th Cir. 1972). This is particularly true in large, complex class actions such as the current case. *See Acevedo v. Sw. Airlines Co.*, No. 1:16-CV-00024-MV-LF, 2019 WL 6712298, at *2 (D.N.M. Dec. 10, 2019) (quoting *Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir. 1980)), *report and recommendation adopted,* No. 1:16-CV-00024-MV-LF, 2020 WL 85132 (D.N.M. Jan. 7, 2020).

Under Rule 23(e), the trial court must approve a class action settlement. Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval."). The procedure for review of a proposed class action settlement is a well-established two-step process. *See Anderson Living Tr. v. Energen Res. Corp.*, No. CV 13-909 WJ/CG, 2021 WL 1686491, at *2 (D.N.M. Apr. 29, 2021), *report and recommendation adopted*, No. CV 13-909 WJ/CG, 2021 WL 1686492 (D.N.M. Apr. 29, 2021); *Manual for Complex Litigation* ("*Manual*"), § 13.14 (4th ed. 2004). First, the court conducts a preliminary approval analysis to determine if there is any reason not to notify the class or proceed with the proposed settlement. *Anderson Living Tr.*, 2021 WL 1686491, at *2. Second, following preliminary approval, the class is notified and provided an opportunity to be heard at a final fairness hearing, at which the court considers the merits of the settlement to determine if it should be finally approved. *See id.*; *accord*, 4 William B. Rubenstein, *Newberg on Class Actions* , § 13.10 (5th ed. 2021).

Through this Preliminary Approval Motion, Plaintiffs request the Court take the first step in this two-step process: granting preliminary approval. Preliminary approval should be granted if "the

proposed settlement was 'neither illegal nor collusive and is within the range of possible approval.'" *Id.*; *see Anderson Living Tr.*, 2021 WL 1686491, at *2. Courts refer to the final approval factors to determine whether a proposed settlement should be *preliminarily* approved. *Id.* (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002) and *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1266 (10th Cir. 2004)).

### B. Standards for Preliminary Approval of a Proposed Settlement.

Under Rule 23(e)(1) of the Federal Rules of Civil Procedure, the inquiry at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) provides that a class action settlement may be approved by the court "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In deciding whether to approve a class action settlement, courts should consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

13

Additionally, in deciding whether a settlement is "fair, reasonable, and adequate," courts in the Tenth Circuit traditionally consider whether:

> (1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) the parties believed the settlement was fair and reasonable.

*Anderson Living Tr.*, 2021 WL 1686491, at *2 (citing *Rutter & Wilbanks Corp.*, 314 F.3d at 1188 and *In re Integra Realty Res., Inc.*, 354 F.3d at 1266). The Tenth Circuit's additional factors overlap with the Rule 23(e)(2) factors, with "[t]he fourth [] factor [being] the only factor that does not directly overlap with the Rule 23(e)(2) factors." *Cisneros v. EP Wrap-It Insulation, LLC*, No. CV 19-500 GBW/GJF, 2022 WL 2304146, at *11 (D.N.M. June 27, 2022). As a result, courts in this District primarily consider the Rule 23(e)(2) factors and separately discuss only the Tenth Circuit's fourth factor. *See, e.g., id.* As discussed below, the proposed Settlement (totaling $174,215,320.82 million in cash) easily satisfies each of the Rule 23(e)(2) and Tenth Circuit factors. Accordingly, Plaintiffs request that the Court grant preliminary approval of the Settlement.

### C.    The Settlement Satisfies the Rule 23(e)(2) Factors

#### 1.    Proposed Settlement Class Representatives and Settlement Class Counsel Have Adequately Represented the Class.

Under this factor, the Court should consider that "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23 advisory committee's notes (2018). Here, the breadth and volume of the work performed by the proposed Settlement Class Representatives and Settlement Class Counsel cannot be understated.

Cases in the ACH Opioids Litigation resolved by the Settlement Agreement have been litigated between the Settling Parties in numerous federal and state forums for nearly eight years. Ex. 1, Burns Decl. at ¶¶ 4–6. Proposed Settlement Class Representatives and Settlement Class Counsel have

responded to multiple rounds of motion practice, including appeals of both dispositive and non-dispositive rulings. *Id.* at ¶ 7. The proposed Settlement Class Counsel has participated in numerous mediations concerning the claims held by the proposed Settlement Class, diligently followed legal proceedings throughout the various bankruptcy proceedings, as well as across the MDL (In re: *National Prescription Opiate Litigation*), including monitoring developments in the various bellwether cases in the MDL; and, has monitored settlements agreed to by parties in jurisdictions outside of the MDL court. *Id.* Finally, the Settlement Agreement is the product of arm's length negotiations. *Id.* at ¶ 9.

Moreover, as discussed above, extensive discovery of members of the Sackler family has been conducted in the bankruptcy action giving Settlement Class Counsel an adequate information base to negotiate an appropriate settlement. Since October 2019, the Sacklers and the Debtors provided unprecedented amounts of discovery to key stakeholders in the bankruptcy action to allow creditors to investigate potential claims. In October 2019, pursuant to a joint Stipulation with the Debtors, the UCC, and the Sacklers, the Raymond Sackler family, for example, provided presentations totaling 1,152 slides, 80,000 pages of detailed business plans, financial reports, management and board presentations, and sales-related and other materials spanning decades. Starting in November 2019, the Raymond Sackler family produced over 50,000 pages of documents in response to an informal discovery request. They provided documents produced in the pre-petition proceedings and investigations, documents supporting presentations given under the Stipulation, and documents relating to family trusts.

On March 31, 2020, the UCC issued a subpoena to the Raymond Sackler family pursuant to Federal Rule of Bankruptcy Procedure 2004. In response to the subpoena, the Raymond Sackler family produced nearly one million pages of discovery relating to Purdue's marketing and sale of opioids, transfers or distributions by Purdue to any Sackler family trusts or entities, and the Sackler families' proposed contribution to a settlement in these cases. The discovered materials consisted of personal

emails and other communications dating back at least to 1995, and more than a decade's worth of bank statements, financial statements, tax returns, tax workpapers, and loan information for family members and trusts of which they are beneficiaries. The scope of discovery even encompassed social media accounts, college email inboxes, and business ventures unrelated to Purdue or pharmaceuticals. Additionally, every living member of the Raymond Sackler family who served on Purdue's board, family members without a role at Purdue, and the Raymond Sackler family's close advisors were deposed, including in some instances, by the states.

Over the next year and a half, the Debtors also produced over 90 million pages of material to estate stakeholders on issues relating to estate claims and the underlying opioid liability claims, including significant discovery from Sackler family custodians and directors from within the past 25 years. The UCC compelled the production of over 16,000 privileged documents from the Debtors, which included communications with members of the Sackler families. The UCC and Non-Consenting States also took 16 depositions of members of the Sackler families, current and former Board members, current employees of the Debtors, and other parties.

There is no question that the magnitude of discovery in the bankruptcy was historic and unprecedented. The bankruptcy court remarked that the scope of the discovery provided in this case with respect to the Plan and with respect to the elements of a settlement with the Sacklers, in particular, was more than the court had ever seen and perhaps more than has ever been provided in any chapter 11 case. *See In re Purdue Pharma L.P.*, No. 19-23649 (Bankr. S.D.N.Y.), Mar. 24, 2021 Hr'g Tr. 56:5-9. Indeed, in his confirmation order, Judge Drain characterized the discovery of the Sacklers as "the most extensive discovery process that not only I have seen after practicing bankruptcy law since 1984 and being on the bench since 2002, but I believe any court in bankruptcy has ever seen." *In re Purdue Pharma L.P.*, 633 B.R. 53, 85–86 (Bankr. S.D.N.Y. 2021). He further remarked that "any assertion that

there has not been 'transparency' in these cases . . . is simply incorrect," and that the states "know how unprecedentedly extensive" the discovered information was. *Id.* at 86.

Collectively, the proposed Settlement Class Counsel (John W. ("Don") Barrett, Warren Tavares Burns, Steven A. Martino, Robert A. Clifford, Charles J. LaDuca, and Stephen B. Farmer) have significant experience prosecuting complex class actions, including RICO and antitrust class actions, in this district and circuit and throughout the country. Ex. 1 Burns Decl. at ¶ 5. Courts around the country recognize the expertise and ability of proposed Settlement Class Counsel to effectively litigate complex class actions.[6]

In deciding adequacy of representation, "courts consider whether: (1) the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) the named plaintiffs and their counsel have prosecuted the action vigorously on behalf of the class." *Cisneros*, 2022 WL 2304146, at *4 (internal citations omitted). Here, no conflicts exist, and the collective tenacity and sophistication of proposed Settlement Class Counsel was instrumental in achieving the substantial settlements, which will provide up to $174,215,320.82 million and significant and immediate relief to the proposed Settlement Class. Therefore, proposed Settlement Class Counsel have provided adequate representation to the certified Class.

## 2.    The Proposed Settlement Was Negotiated at Arm's Length.

The second factor under Rule 23(e)(2)(B) overlaps with the first factor considered by courts in the Tenth Circuit and assesses whether the settlement was fairly and honestly negotiated. *See Lowery*

---

[6] *See, e.g.*, *In re Insulin Pricing Litig.*, No. 3:17-CV-699-BRMLHG, 2020 WL 5642002, at *7 (D.N.J. Sept. 22, 2020) (recognizing that Mr. Barrett has "substantial experience litigating complex commercial disputes including class action and antitrust matters"); *Kjessler v. Zaappaaz, Inc.*, No. 4:17-CV-3064, 2018 WL 8755737, at *5 (S.D. Tex. Aug. 31, 2018) (recognizing that "Mr. Burns and his firm have significant experience in anti[t]rust class actions"); *Buttonwood Tree Value Partners, L.P. v. Sweeney*, No. SA-CV-1000537-CJCMLGX, 2014 WL 12586788, at *3 (C.D. Cal. May 15, 2014) (agreeing with class counsel that the Cuneo Gilbert & Laduca firm has significant "experience with securities fraud class actions").

*v. City of Albuquerque*, No. CIV 09-0457 JB/WDS, 2013 WL 1010384, at *36 (D.N.M. Feb. 27, 2013); *Anderson Living Tr. v. Energen Res. Corp.*, No. CV 13-909 WJ/CG, 2021 WL 3076910, at *3 (D.N.M. July 21, 2021). Settlements reached after real negotiations through representation by experienced counsel well-versed in the legal and factual issues of the case support a finding of fair and honest negotiation. *See, e.g.*, *Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, No. 19-940 GJF, 2021 WL 1339305, at *9 (D.N.M. Apr. 9, 2021); *Acevedo v. Sw. Airlines Co.*, No. 1:16-CV-00024-MV-LF, 2019 WL 6712298, at *2 (D.N.M. Dec. 10, 2019), *report and recommendation adopted*, No. 1:16-CV-00024-MV-LF, 2020 WL 85132 (D.N.M. Jan. 7, 2020); *Lowery*, 2013 WL 1010384, at *36; *Anderson Living Tr*, 2021 WL 3076910, at *3.

"[T]here is a presumption in favor of a finding that negotiations were fair when they were conducted before a third-party mediator." *Cisneros*, 2022 WL 2304146, at *5. An experienced mediator's involvement "in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a "mediator's involvement in … settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

Here, the Settlement was preceded by a period of protracted litigation in the bankruptcy action. In 2019, facing civil litigation in hundreds of actions across the United States, Purdue filed for chapter 11 bankruptcy. *See In re Purdue Pharma, L.P. et al.*, Case No. 19-23649 (SHL) (Bankr. S.D.N.Y.). And following that bankruptcy filing, various creditor groups began arduous and protracted arms'-length negotiations with Purdue and with the Sacklers. These negotiations, which continued for many months, were facilitated by retired U.S. District Judge Layn R. Phillips and by Kenneth R. Feinberg. The first phase of mediation resulted in allocation settlements between non-federal public claimants and several private claimants groups. Shortly thereafter, Purdue and the Sacklers reached related

18

settlements with the Department of Justice, which was approved by the bankruptcy court. The second phase of mediation culminated in a proposed chapter 11 plan of reorganization for Purdue. And in late 2021, about two years after negotiations had started, that chapter 11 plan of reorganization was confirmed by the bankruptcy court in the Southern District of New York (U.S. Bankr. Judge Robert D. Drain, presiding). As confirmed, the chapter 11 plan would have resolved and released creditors' claims, including school districts' claims, both against Purdue's estate (so-called "estate" claims) and against the Sacklers and additional non-debtor entities (so-called "direct" claims). But appeals ensued challenging the plan. In December 2021, Judge Colleen McMahon of the U.S. District Court of the Southern District of New York reversed the confirmation, which was appealed to the Second Circuit. The Second Circuit reversed the district court, reviving the bankruptcy court's reorganization plan (which had been modified). The appeals ultimately reached the Supreme Court. And in June 2024, the Supreme Court vacated the bankruptcy court's chapter 11 plan, holding that the Bankruptcy Code does not authorize a bankruptcy court to approve, as part of a plan of reorganization under chapter 11, releases and injunctions that extinguish claims against non-debtor third parties, such as the Sacklers, without the consent of affected claimants. *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024).

In the wake of the Supreme Court's ruling, various creditor groups resumed negotiations with Purdue and the Sacklers. Once again, skilled and experienced neutrals—this time, retired bankruptcy judge Shelley C. Chapman and retired Law Professor and ADR specialist and settlement monitor Eric D. Green—facilitated the negotiations, which continued for months.

The resulting Settlement then is the product of arm's-length negotiations between the Settling Parties, advised by their sophisticated counsel, who possessed more than sufficient evidence and knowledge to allow them to make informed decisions about the strengths and weaknesses of their respective cases. During negotiation, the relevant legal issues were fully presented for the Settling

Parties to effectively evaluate liability and damages. *Id.* As a result, the Settling Parties were well prepared for the serious negotiations that led to the Settlement Agreement and were well informed of the respective parties' arguments. *See Montgomery*, 2021 WL 1339305, at *9; *Acevedo*, 2019 WL 6712298, at *2; *Lowery*, 2013 WL 1010384, at *36; *Anderson Living Tr*, 2021 WL 3076910, at *3.

Accordingly, the Settlement achieved here should be presumed to be the result of arm's-length, fair, and honest negotiations. *See Cisneros*, 2022 WL 2304146, at *5.

### 3. The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal.

"Although it is not the role of the Court at this stage of the litigation to evaluate the merits … it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact the case if it were litigated." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693-94 (D. Colo. 2006) (citation and internal quotations omitted). As strongly as the Settling Parties feel about the merits of their positions, each side recognizes that serious questions of law and fact exist in this case.

In assessing the Settlement Agreement, the Court should also balance the benefits afforded to the certified Settlement Class, including the immediacy and certainty of a recovery, against the significant costs, risks, and delay of proceeding with the Litigation. *See* Rule 23(e)(2)(C)(i). This third factor is based on the premise that the Settlement Class "is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted." *See Acevedo*, 2019 WL 6712298, at *3 (citing *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008)).

This consideration largely overlaps with the second ("'whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt'") and third factors ("'whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation'") traditionally considered by courts in the Tenth Circuit. *Chavez Rodriguez v. Hermes*

*Landscaping, Inc.*, No. 17-2142-JWB-KGG, 2020 WL 3288059, at *2–3 (D. Kan. June 18, 2020); *see Cisneros*, 2022 WL 2304146, at *5 (explaining that all but the Tenth Circuit's fourth factor overlap with Rule 23's factors).  Thus, courts consider these factors to be "subsumed under Rule 23's requirement." *Chavez Rodriguez*, 2020 WL 3288059, at *2–3; *see, e.g.*, *Cisneros*, 2022 WL 2304146, at *5 (incorporating analysis of Rule 23 factors by reference into analysis of Tenth Circuit factors).

> **a.    Serious Legal and Factual Questions Placed the Litigation's Outcome in Doubt.**

The presence of serious legal and factual questions concerning the outcome of this litigation weighs heavily in favor of settlement, as "settlement outweighs the mere possibility of future relief after protracted and expensive litigation." *See Montgomery*, 2021 WL 1339305, at *6; *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009).  "Although it is not the role of the Court at this stage of the litigation to evaluate the merits, 'it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact the case if it were litigated.'" *See Montgomery*, 2021 WL 1339305, at *9 (quoting *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693-94 (D. Colo. 2006)).  The presence of questions of law and fact "tips the balance in favor of settlement because settlement, creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *McNeely, LLC*, 2008 WL 4816510, at *13; *see also Tennille v. W. Union Co.*, 785 F.3d 422, 435 (10th Cir. 2015) (affirming final approval of settlement where "serious disputed legal issues" rendered "the outcome of th[e] litigation . . . uncertain and further litigation would have been costly").

The current proposed Settlement notwithstanding, there remain numerous factual and legal issues on which the Settling Parties still intensely disagree. Settling Defendants deny that they have engaged in any wrongdoing as alleged by Plaintiffs, deny any liability whatsoever for any of the claims alleged by Plaintiffs, and deny that Plaintiffs have suffered any injuries or damages. Conversely,

Plaintiffs have advanced numerous complex legal and factual issues under federal RICO statutes and various state laws in other *fora*.

The issues on which the Settling Parties disagree are many, but include: (1) whether any of the Settling Defendants engaged in conduct that would give rise to any liability under the federal RICO statutes; (2) whether the Settling Defendants have valid defenses to any such claims of liability; (3) the amount of damages suffered by reason of the Settling Defendants' alleged wrongdoing, as well as the methodology for estimating any such damages; (4) whether the Court may properly certify a class for purposes of litigation; and (5) whether the Settling Defendants had other meritorious defenses to the alleged claims. Although the proposed Settlement Class Representative believes their claims would be borne out by the evidence presented at trial, they recognize that there are significant hurdles to proving liability or even proceeding to trial. Had the parties not reached the Settlement Agreement, the Court or a jury would ultimately be required to decide these issues, placing the litigation's ultimate outcome in doubt.

> **b.    Immediate Recovery Is More Valuable than the Mere Possibility of a More Favorable Outcome After Further Litigation.**

Considering the risks associated with continued litigation, as discussed above, the immediate, substantial relief offered by the Settlement "outweigh an uncertain result several years in the future." *Montgomery*, 2021 WL 1339305, at *10; *see id.* at *6 ("'[I]t has been held proper "to take the bird in the hand instead of a prospective flock in the bush.'''); *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1244 (D.N.M. 2012) ("'[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now'") (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002)).

The ACH Opioids Litigation has been pending for nearly eight years. Ex. 1, Burns Decl. at ¶¶ 4–6. The Settling Parties and courts in this and other jurisdictions will likely expend significant additional time, resources, and costs to proceed to trial, and the inevitable appeals will likely extend years into the future. *See Acevedo*, 2019 WL 6712298, at *3 ("Many more months and significant costs

would be required for the parties and Court to complete the pretrial proceedings[.] … In short, the ultimate resolution of this action on the merits (and in turn, compensation to Settlement Class Members) via trial and appeal is indefinite at best."); *Chavez Rodriguez*, 2020 WL 3288059, at *3 (observing that "the costs and time of moving forward in litigation would be substantial"); *Lucas*, 234 F.R.D. at 694 ("If this case were to be litigated, in all probability it would be many years before it was resolved."). Considering the complex legal and factual issues associated with continued litigation, there is an undeniable and substantial risk that, after years of continued litigation, the proposed Settlement Class could receive an amount significantly less than the up to $174 million provided by the Settlement Agreement, or nothing at all, for their claims against the Settling Defendants.

"By contrast, the proposed settlement agreement provide the class with substantial, guaranteed relief" now and in the future. *Acevedo*, 2019 WL 6712298, at *3 (D.N.M. Dec. 10, 2019) (quoting *Lucas*, 234 F.R.D. at 694 and citing *McNeely*, 2008 WL 4816510, at *13 (finding that the class "is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted.")). "[The] immediate recovery in this case outweighs the time and costs inherent in complex [] litigation, especially when the prospect is some recovery versus no recovery." *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 (D. Colo. 2014); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. Aug. 10, 1976); *accord Tennille v. W. Union Co.*, No. 09-cv-00938- JLK-KMT, 2014 WL 5394624, at *4 (D. Colo. Oct. 15, 2014), *appeal dismissed*, 809 F.3d 555 (10th Cir. 2015). Thus, the recoveries under the Settlement Agreement, particularly when viewed in the context of the risks, costs, delay, and the uncertainties of further proceedings, weighs in favor of preliminary approval of the Settlement.

### 4. The Proposed Methodology for Distributing Relief is Effective.

The proposed distribution method for the common-fund settlement will be highly effective. The proposed Notice and Claims Administrator, A.B. Data, will provide direct notice by email or

First-Class Mail to all Settlement Class Members identified through reasonable efforts and appearing on a list of over 5,700 hospitals providing emergency services. *See* Ex. 3 Devery Decl. at ¶ 7. The proposed Notice and Claims Administrator will also conduct targeted notice through relevant media. *Id.* at ¶¶ 12–17. In addition, a case-designated website will be created where settlement-related and other key documents will be posted, including the Settlement Agreement, Notices, Proofs of Claim (Claim Forms), and Preliminary Approval Order. *Id.* at ¶¶ 16–17.

Plaintiffs propose a fair and orderly claims administration process in which Settlement Class Members who wish to participate in the Settlement will complete and submit Proofs of Claim in accordance with the instructions contained therein. Plan of Allocation, attached as Ex. A to Settlement Agreement. The Settlement Administrator will distribute the Net Settlement Funds to Authorized Claimants under a Court-approved Plan of Allocation. *See* Plan of Allocation, attached as Ex. A to Settlement Agreement. The Plan of Allocation proposed here was prepared with information provided by Plaintiffs' experts, in consultation with the Hon. Thomas Hogan, and is consistent with the ACH plans of allocation originally developed in the Purdue Pharma bankruptcy proceedings (Case No. 19-23649), and utilized thereafter in the Mallinckrodt, plc (Case No. 20-12522) and Endo (Case No. 22-22549) bankruptcy proceedings and the four distribution settlements approved by this Court on March 4, 2025. Therefore, Plaintiffs' proposed methodology for distributing relief is effective.

### 5.    Attorneys' Fees and Expenses.

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). The Notice provides that Settlement Class Counsel will apply to the Court for an award of attorneys' fees in an amount up to one-third of the Settlement Amount, plus payment of Plaintiffs' counsel's expenses incurred in connection with the underlying litigation, plus interest earned on these amounts at the same rate as earned by the Settlement Fund.

Settlement Class Counsel's anticipated fee request is well within the range that other courts in this District and the Tenth Circuit have approved in complex class actions. *See*, *e.g.*, *Cisneros*, 2022 WL 2304146, at *8 (approving attorneys' fees amounting to "one-third of the gross settlement amount" and explaining that "a contingent fee of one-third of the settlement amount in a class action is standard in this Court and other district courts in the Tenth Circuit."); *Anderson Living Tr.*, 2021 WL 3076910, at *7, *9 (approving attorneys' fees "constituting 40% of the settlement fund); *Montgomery*, 2021 WL 1339305, at *7 (approving of attorney' fees amounting to "approximately 31.47% of the settlement fund"); *Acevedo*, 2019 WL 6712298, at *4 (approving attorneys' fees amounting to "33.33% of the gross recovery"); *In re Thornburg Mortg., Inc.*, 912 F. Supp. 2d at 1257 ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingency fee basis.").

### 6.    The Settling Parties Have No Additional Agreement.

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreements. Plaintiffs do not have any additional agreements with any of the Settling Defendants.

### 7.    Settlement Class Members Are Treated Equitably.

The final factor, Rule 23(e)(2)(D), looks at whether certified Settlement Class Members are treated equitably. As reflected in the Plan of Allocation, attached as Ex. A to Settlement Agreement, Settlement Class Members are treated equitably here. The Plan of Allocation provides all Settlement Class Members the opportunity to submit a claim for an expedited Quick Pay amount. *See, e.g* Plan of Allocation, attached as Ex. A to Settlement Agreement. In the alternative, all Settlement Class Members may elect to participate in a more detailed damages calculation and allocation process utilizing objective factors detailed in the Plan of Allocation for the Settlement. *Id.* The Plan of Allocation does not discriminate among Settlement Class Members, treating all Settlement Class Members fairly.

8.    **The Settlement Satisfies the Remaining Factor Considered by Courts in the Tenth Circuit.**

The final, additional factor courts in the Tenth Circuit consider is "'the judgment of the parties that the settlement is fair and reasonable.'" *Cisneros*, 2022 WL 2304146, at *11. "Under this factor, 'the recommendation of a settlement by experienced plaintiffs['] counsel is entitled to great weight.'" *Id.* (internal citations omitted).

Proposed Settlement Class Counsel—all senior attorneys at law firms with considerable experience in complex class actions—only agreed to settle after extensive investigation and rigorous arm's-length negotiations. Ex. 1, Burns Decl. at ¶ 9. Additionally, as noted above, proposed Settlement Class Representatives and Settlement Class Counsel have compared the substantial recovery the certified Settlement Class will receive from the Settlement against the risks, delays, and uncertainties of continued litigation and appeals. Proposed Settlement Class Representatives and Settlement Class Counsel believe the Settlement is fair, adequate, and reasonable and should be approved. The Settling Defendants likewise believe that the Settlement should be approved.  Because the above factors weigh in favor of the Settlement, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement.

## III.    THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE SETTLEMENT CLASS ARE APPROPRIATE

### A.    The Court Should Preliminarily Approve the Proposed Notice of Settlement.

Rule 23(c)(2)(B) requires that notice in a Rule 23(b)(3) class action constitute "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In terms of content, a settlement notice need only be "reasonably calculated, under all of the circumstances, to apprise [the] interested parties of the pendency of the [settlement proposed] and [to] afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see also, e.g., Fager v.*

*Centurylink Commc'ns, LLC*, No. 14-CV-00870 JCH/KK, 2015 WL 13298517, at *6 (D.N.M. June 25, 2015), *aff'd sub nom. Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167 (10th Cir. 2016). "'The hallmark of the notice inquiry . . . is reasonableness.'" *Lucas*, 234 F.R.D. at 696.

Plaintiffs have submitted to the Court for approval the Long Form Notice and Summary Notice that will be provided to the certified Settlement Class. In accordance with Rule 23(c)(2)(B), the proposed Notice will fully inform Settlement Class Members about the underlying litigation, the proposed Settlement Agreement, and the facts they need to make informed decisions about their rights and options in connection with the Settlement Agreement. Specifically, the Notice clearly describes: (i) the nature of the (proposed) Settlement and the (proposed) Plan of Allocation; (ii) the nature and extent of the release of claims; (iii) Settlement Class Counsel's intent to request attorneys' fees, and expenses; (iv) the method for submitting a Proof of Claim; (v) the procedure and timing for objecting to the Settlement; (vi) the date, time, and place of the Final Fairness Hearing; and (vii) ways to receive additional information about this Litigation and the proposed Settlement. The Notices also provide Settlement Class Members with a toll-free telephone number, email address, and a Settlement website where Settlement Class Members may obtain additional information. Thus, the Notices are reasonably calculated to apprise the interested parties of the pendency of the Settlement and afford them a fair opportunity to object. As such, the form and manner of the proposed Notice meets the requirements of both Rule 23 and due process. The Court should approve the Notices and the manner through which they will be delivered and communicated to the certified Settlement Class.

**B.** **Appointment of A.B. Data and Cherry Bekaert Advisory LLC as the Notice and Claims Administrators Is Proper.**

Plaintiff and proposed Settlement Class Representatives request that the Court appoint A.B. Data and Cherry Bekaert Advisory LLC ("Cherry Bekaert") to serve as the Notice and Claims Administrator with respect to the Settlement, which includes providing notice of the Settlement and administering the claims process and distribution of the Net Settlement Funds. A.B. Data is a highly

experienced and well-qualified notice and claims administrator. *See* Ex. 3, Devery Decl. Proposed Settlement Class Counsel have worked favorably with A.B. Data and are confident in A.B. Data's ability to continue the successful administration of notice and the Settlement for this Litigation.

As detailed in the Plan of Allocation, Cherry Bekaert developed the Acute Care Hospital Allocation Model and Algorithm to permit the computation of Settlement Class Member damages and subsequent allocation under the Settlement Agreement (the "Model"). *See, e.g.*, Plan of Allocation, attached as Ex. A to Settlement Agreement. The Model was first approved and utilized to determine acute care hospital claimant allocations in Purdue Pharma, Mallinckrodt, plc, and Endo bankruptcy proceedings. *Id.* Cherry Bekaert will utilize the Model in these proceedings to analyze and process Settlement Class Member claims, as detailed in the Plan of Allocation. *Id.*

### C.  Appointment of the Hon. Thomas Hogan (Ret.) as Special Master or Trustee Is Proper.

Plaintiff and proposed Settlement Class Representatives request that the Court appoint the Hon. Thomas Hogan (Ret.) as Special Master or Trustee to oversee the allocation process depending on how certain matters in the Purdue Pharma are solved. Retired Judge Hogan is a former Circuit Judge for Cook County, Illinois.  He is a highly respected and experienced mediator and arbitrator. Ex. 1, Burns Dec. at ¶ 10. Retired Judge Hogan will oversee and administer the Plan of Allocation, including determining the Allocated Amounts due to Settlement Class Members (in cooperation with Cherry Bekaert) and resolving any questions or disputes regarding the same. *See, e.g.*, Ex. 2, Settlement Agreement.  Judge Hogan has performed the same function while serving as the Hospital Trustee in the Purdue Pharma, Mallinckrodt, plc, and Endo bankruptcy proceedings.

### D.  Appointment of Pinnacle Bank as Escrow Agent (if needed) Is Proper.

The Settling Parties request the Court appoint Pinnacle Bank as Escrow Agent, if needed. It is not yet clear whether an Escrow Agent will be needed, or if the Delaware Trust being established for the benefit of acute care hospital in the Purdue Pharma bankruptcy case can be utilized. Pinnacle

Bank is a well-known and highly respected bank providing consumers, corporations, governments, and institutions with a broad range of financial services. Proposed Settlement Class Counsel in this case have worked favorably with Pinnacle Bank in the past. Based on Pinnacle Bank's experience and familiarity with performing the services of an escrow agent, proposed Settlement Class Counsel are confident Pinnacle Bank will properly perform the duties of Escrow Agent as ordered by the Court.

**E.      Establishment of the Escrow Account as "Qualified Settlement Funds", if needed, Is Proper.**

As set forth in the Settlement Agreement deposited funds qualify as "qualified settlement funds" within the meaning of Treasury Regulations 26 CFR § 1.468B-1. If necessary, an Escrow Account will be established to resolve or satisfy one or more contested or uncontested claims that have resulted or may result from an event (or related series of events) that has occurred and that has given rise to at least one claim asserting liability arising out of tort, breach of contract, or violation of law in accordance with 26 CFR § 1.468B-1(c)(2)(ii). Moreover, the Escrow Account's assets are physically segregated from the other assets of the transferor (and related persons) in accordance with § 1.468B-1(c)(3).

**F.      Proposed Schedule of Settlement Events.**

If the Court grants preliminary approval of the proposed Settlement, the Settling Parties respectfully submit the following proposed procedural schedule, as detailed in the proposed Preliminary Approval Order:

| DATE / DAYS (days are calendar days unless otherwise specified) | EVENT |
|---|---|
| November 12, 2025 | Plaintiffs file Motion for Preliminary Approval of Settlement |
| 10 days after the Settlement Agreement is filed with the Court | Settling Defendants provide Class Action Fairness Act Notice to State Attorneys General |
| , 2025 | Hearing on Preliminary Approval of the Settlement [Date and Time TBD by Court] |

| DATE / DAYS (days are calendar days unless otherwise specified) | EVENT |
|---|---|
| No later than 21 days following entry of the Preliminary Approval Order | Settlement Notice Program Begins ("Notice Date") |
| 30 days after Notice Date | Plaintiffs file Motion for Final Approval of Settlement, Attorneys' Fees, Expenses, and Service Awards |
| 45 days after Notice Date | Deadline for Settlement Class Members to submit Opt-Outs to the Notice Administrator, Interim Settlement Class Counsel, and Settling Defendants ("Opt-Out Deadline") |
| 45 days after Notice Date | Objection Deadline and Deadline for State Attorneys General to file Comments/Objections |
| 7 days after Opt-Out Deadline | Deadline for Notice and Claims Administrators to provide Opt-Out Report to Settling Defendants and Interim Settlement Class Counsel |
| 15 business days after receipt of Opt-Out Report | Deadline for Settling Defendants to exercise Walk-Away Right |
| 75 days after Notice Date | Plaintiffs file Response to Objections for Final Approval of Settlement, Attorneys' Fees, Expenses, and Service Awards |
| , 2026 | Fairness Hearing on Final Approval of Settlement, Attorneys' Fees, Expenses, and Service Awards [Date and Time TBD by Court, provided that the Fairness Hearing shall not be scheduled any earlier than the later of: (1) one hundred twenty (120) days following the Motion for Preliminary Approval; (2) five (5) days following the deadline for Settling Defendants to exercise their Walk-Away Right; or (3) no earlier than ninety (90) days following the entry of the Preliminary Approval Order.] |

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant Plaintiffs' motion for preliminary approval and enter the agreed proposed Preliminary Approval Order, attached as Exhibit D to the Settlement Agreement and submitted in Word format herewith, that will:

1. provisionally certify the Settlement Class for settlement purposes only;

2. preliminarily approve the Settlement Agreement;

3. appoint Plaintiff and other specified Acute Care Hospitals as Settlement Class

Representatives for the Settlement Class;

4. appoint John W. ("Don") Barrett, Warren Tavares Burns, Steven A. Martino, Robert A. Clifford, Charles J. LaDuca, and Stephen B. Farmer as Interim Settlement Class Counsel for the Settlement Class;

5. approve the form and manner of the proposed Notice to the Settlement Class;

6. appoint A.B. Data and Cherry Bekaert Advisory, LLC as Notice and Claims Administrators;

7. appoint the Hon. Thomas Hogan (Ret.) as Special Master, or Trustee as appropriate;

8. appoint Pinnacle Bank as Custodian/Escrow Agent, if needed;

9. establish the Escrow Account as Qualified Settlement Funds, if needed;

10. set a Hearing on Final Approval of Settlement, Attorneys' Fees, Litigation Expenses, and Notice and Administrative Costs ("Final Fairness Hearing") and associated deadlines in anticipation of that hearing;

11. grant a stay of all proceedings in any forum brought by Releasors as to the Settling Defendants, as specified in the Settlement Agreement, and directing Settlement Class Representatives to file motions to sever and stay the Other Actions brought by the Settlement Class Representatives as against the Settling Defendants, to the extent not already filed; and

12. enjoin all Settlement Class Members from filing or prosecuting any new proceedings for Released Claims, as specified in the Settlement Agreement, unless and until the Settlement Class Member has timely and validly excluded itself from the Settlement Class, beginning as of the date the exclusion becomes effective.

Dated: November 12, 2025                    Respectfully submitted,

Christopher A. Dodd
FAYERBERG DODD, LLC
500 Marquette Avenue NW, Suite 1330
Albuquerque, New Mexico 87102
(505) 475-2932
chris@fayerbergdodd.com


Additional Counsel for Plaintiff Who Have or Will Seek Admission *Pro Hac Vice*

Warren Burns
Darren Nicholson
Ryan Gaddis
Connor Weldon
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
(469) 904-4550
wburns@burnscharest.com
dnicholson@burnscharest.com
rgaddis@burnscharest.com
cweldon@burnscharest.com

Korey A. Nelson
BURNS CHAREST LLP
201 St. Charles Avenue, Suite 2900
New Orleans, Louisiana 70170
(504) 799-2845
knelson@burnscharest.com

Steve Martino
TAYLOR MARTINO, P.C.
51 St. Joseph Street
Mobile, Alabama 36602
(251) 433-3131
SteveMartino@taylormartino.com

John W. (Don) Barrett
David McMullan, Jr.
Richard Barrett
Sterling Aldridge
BARRETT LAW GROUP, P.A.
P.O. Box 927
Lexington, Mississippi 39095
(662) 834-2488
dbarrett@barrettlawgroup.com
dmcmullan@barrettlawgroup.com
rrb@rrblawfirm.net
saldridge@barrettlawgroup.com

Charles J. LaDuca
David L. Black
Monica Miller
Jennifer E. Kelly
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
(202) 789-3960
charles@cuneolaw.com
dblack@cuneolaw.com
monicam@cuneolaw.com
jkelly@cuneolaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court and served to all counsel of record via the Court's CM/ECF system.

Christopher A. Dodd

33